United States District Court
Southern District of Texas
FILED

MAR 0 2 2016

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

SAGRARIO E. SILVA

    Plaintiff,

      Vs.

SPRING BRANCH ISD

    Defendant,

ELLEN SPALDING
KAREN HEETH
MARIANNE CRIBBIN
GLORIA TENNON
STEPHANIE BROWN

    Defendants,
(In their individual capacities)

Civil Case_____

---

## ORIGINAL COMPLAINT

1.     Plaintiff brings this **Pro-Se** action under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e*et seq.* ("Title VII"), and the Age Discrimination Act, 29 USC &621, etseq, for national origin, race, age, discrimination hostile work environment, harassment and retaliation.

## JURISDICTION

2.     This court has jurisdiction pursuant to pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the U.S.C. § 1331 and U.S.C. § 1343 and the age discrimination employment Act, 29 USC §621, et.seq.

## VENUE

3.  Venue is proper in this district as plaintiff was employed by Spring Branch ISD in the state of Texas and employer is located in this Houston jurisdiction; and adverse actions to Plaintiff employment that are the subject of this civil action were made in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.  Plaintiff filed a timely Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on November 24, 2015; the EEOC issued Plaintiff a RIGHT TO SUE LETTER dated December 4, 2015. Plaintiff has exhausted her administrative remedies and files this suit within the statutory limitations period.

## PARTIES

5.  Plaintiff is a Hispanic female of 56-years of age resident of the Harris County. Plaintiff was at all times relevant, employed in good standing as a substitute teacher since August 2012, until her employment was terminated on May 22, 2015. Plaintiff was at all relevant times an employee within the meaning of the applicable statutes.

6.  Defendant Spring Branch Independent School District is a public school district located in the Harris County, Texas.

7.  Defendants, Ellen Spalding, is the legal counsel for the Spring Branch ISD, Karen Heeth, is the director of recruitment and staff placement; Gloria Tennon is the substitute

specialist; Marianne Cribbin is associate Superintendent for human resources; Stephanie Brown, is the executive secretary for human resources.

## STATEMENTS OF FACTS

8.      Plaintiff had been a substitute teacher employee for the Spring Branch ISD with over eight years of satisfactory service. Plaintiff was assigned to work at different elementary schools around the school district. On Thursday, May 21, 2015, plaintiff was assigned to work at Westwood elementary in a second grade classroom; Plaintiff worked and completed her full day teaching assignment at that school without any incidents.

9.      At the time of her termination, on Friday, May 22, 2015, plaintiff assigned job was at another elementary school in a first grade classroom. At around 9:25am, the school principal came into the room and informed plaintiff that she was being dismissed from the assignment by the orders of Defendant, Karen Heeth.

10.     Defendant Karen Heeth ordered plaintiff to "go straight home" and prohibited Plaintiff to establish any type of contact with the superintendent's office or any other school district's staff, including the superintendent and board members.

11.      Plaintiff was offered no explanation as to why she was being dismissed from her assignment, or why she was being prohibited to contact the district's administrators.

12.     Despite the unusual and unfair orders received from Defendant Karen Heeth, at around 9:45am, Plaintiff visited the office of defendant Gloria Tennon, the substitute teachers

-3-

supervisor, who stated that the reason for her dismissal was due to a phone call received early that morning on Friday, May 22, 2015, from the principal of Westwood elementary, the school plaintiff was subbing on the day before on May 21, 2015.

Defendant Tennon stated to Plaintiff that Kay Kennard, the principal at Westwood elementary, had said that the mom of a girl in the classroom she was subbing for, had come to the school the early morning on that same day, Friday May 22, 2015, alleging that her daughter "had been forced to kneel for most part of the day, from the early morning until the end of the day".

Plaintiff categorically denied the allegation and asked for more details. Defendant Tennon stated that they were not given any details but that "the girl was bleeding on both of her knees".

3.      Plaintiff challenged the allegations which were not only totally untrue but made no sense, and denied that the incident had ever occurred, clearly stating that she did not see anybody kneeling or bleeding; Does the principal, (Kay Kennard) saw the girl? Asked plaintiff.

4.      Defendant Tennon responded that "No, Ms. Kennard did not see the girl, the child was at the cafeteria eating breakfast, the mom told Ms. Kennard and Ms. Kennard told us".

5.      Plaintiff was absolutely confident that was untrue and expressed her concerns about the veracity and accuracy of such allegations.

6.    Defendant Tennon was unable to provide any other explanation, rather, she continued asking plaintiff repeatedly and in many different ways, about the alleged kneeling, "try to remember", "maybe someone was kneeling and you did not noticed", "someone must had been given you trouble and you disciplined in some way", among other.

7.    Plaintiff consistently denied the allegations and repeated that "nothing had ever happened, the students were behaving well, and there was no reason to punish them".

8.    Defendant Tennon however, insisted in obtaining a different answer from plaintiff stating that "even the best students misbehave at some point" and that teachers always have issues with students, and that plaintiff must have had some issues.

9.    Plaintiff stated that the only thing was a boy who apparently was "bouncing" on his chair, fell off on his back that they had a talk about the dangers of falling off from a chair.

10.    Defendant Tennon jumped on asking plaintiff, "what you did to the boy". Plaintiff clearly and categorically stated that there were no consequences, "because falling from a chair was not a bad behavior". Plaintiff stated that the students instead, were given breaks.

11.    Defendant Tennon kept asking, "try to remember, a girl might had been also bouncing on her chair and you might have punished her…tell me about the activities that day" and so on.

12.    Plaintiff was at all times consistent with her answers and repeated that "nothing had happened, nobody kneeled, nobody was punished, not a girl, not a boy" and that the

student's behavior was fine. Plaintiff voiced her concerns to defendant Tennon about being unfairly accused.

13.    Defendant Tennon told plaintiff that the principal at Westwood elementary was investigating and that someone from HR will contact her to discuss the results of the investigation.

14.    At around 10:45am, plaintiff went to Westwood elementary; she was greeted by Ms. Sanchez-Hidalgo, the front desk person, to whom plaintiff first inquiry about a puppy she was offered the day before and asked to speak to the principal. Few minutes later, Celia Silva, the school administrator came out and let plaintiff know that Ms. Kennard was unable to meet her but that she will deliver the message.

15.    Plaintiff told Celia Silva that she just wanted to clarify that the allegations were untrue that nothing had happened, Celia Silva interrupted plaintiff and said "we already know Ms. Silva, is about a girl".

16.    Plaintiff told Celia Silva that she would prefer to meet with the principal, perhaps she, the principal would be able to ask the classroom's teacher to inquiry with the students about the day on May 21, 2015, since she was absolutely confident that the accusations were totally untrue and would be clarified.

17.    Celia Silva replied that "Ms. Rimbau is at her instructional time and we will not interrupt her just to ask the students", and that Ms. Kennard and Ms. Rimbau will not ask the students either but that she will deliver the message. That was the end of the conversation.

18.    Defendant Tennon contacted plaintiff at around 11:25am, stating that Kay Kennard had call HR saying that Celia Silva has said that plaintiff was at the school "demanding the name of the girl". Ms. Tennon also informed plaintiff that Karen Heeth had been very clear, "she does not want you to talk principal", and that the police would be called upon plaintiff if she ever attempted to talk to the principal again.

19.    Plaintiff voiced her concerns about being unfairly treated and that she thought she had the  right to clarify the unfair accusations against her, as any other employee would do, that offering the police was extremely rude.

20.    Defendant Tennon stated that "you are only a substitute; you must obey what the HR person (Karen Heeth) is telling you to do".

21.    Plaintiff replied that she thought those orders were unfair and somehow discriminatory, and that she would continue to seek a clarification of the matter. Defendant Tennon stated that, "its' up to you, but you must know that will get you into more trouble".

22.    Shortly after, Defendant Tennon contacted plaintiff again at around 12:15pm, informing of a meeting with defendant Karen Heeth at 2:30pm, asserting that the meeting would be to "discuss the report from Ms. Kennard's investigation".

23.    Defendant Karen Heeth meet with plaintiff  and told her that she had decided to terminate her job as a substitute teacher given as a reason for termination that "some

-7-

students were allowed to stand and kneel for large periods of time", as well serving plaintiff with a termination letter containing the same statement.

24.     Plaintiff denied all and any of the allegations and disputed the reason for her termination asking why the reason for termination had shifted? and to be provided with the evidence.

25.     Defendant Karen Heeth did not provide any explanation; rather, she stated that her decision was final; that there was no investigation report from Ms. Kennard and that "the school district don't render necessary to conduct any further investigation on this case" among other remarks.

26.     Defendant Karen Heeth also stated not being interested in listening to any story, "nobody does", and that don't matter what plaintiff might have to say, "nothing would ever change, my decision would be sustained".

27.     Defendant Karen Heeth denied Plaintiff's request to meet with the Westwood elementary principal and made clear that plaintiff was "prohibited to talk to the principal" and to other staff and district's administrators "particularly, the superintendent's and the school board".

28.     Plaintiff disagreed and said, "this is unfair, I think I have the right to be provided the opportunity to clarify the false allegations against me and to know the nature of the accusations".

29.     Defendant Karen Heeth stated, "I don't know Ms. Silva how things work in the place you came from, but here, this is the way it works", repeating that her decision won't change. Defendant Karen Heeth further stated that "nobody is treating you different, you just perceiving things from your own background perspective and you are wrong on that too".

30.     Defendant Karen Heeth then requested plaintiff to handwrite a letter with the assistance of defendant Gloria Tennon, to which plaintiff refused.

31.     At this point, Defendants Karen Heeth and Gloria Tennon presented no evidence, not a single document to probe any of the accusations against plaintiff.

32.     Right after meeting with defendant Karen heeth, plaintiff sought the assistance of defendant Marianne Cribbin (next on the chain of command) and spoke to Defendant Stephanie Brown (executive secretary for Marianne Cribbin) who told plaintiff that she would need to make an appointment, however when plaintiff requested the appointment, Stephanie Brown refused to and said, "I will call you later to let you know". Defendant Stephanie Brown failed to call  plaintiff.

33.     On Wednesday, May 27, 2015, plaintiff placed a call to defendant Stephanie Brown inquiring about her request, Defendant Brown said "Marianne Cribbin still don't have an answer for you".

34.     On Monday, June 1, 2015, plaintiff went to make a request of her personnel file; plaintiff first stopped by defendant Stephanie Brown's office to inquiry about her request for a meeting with Marianne Cribbin; defendant Brown's behavior was hostile and rude

and did not allow plaintiff into the office instead, defendant Stephanie Brown pushed plaintiff's on her back toward the exit hallway saying "here is the exit".

35.    Plaintiff told defendant Brown that she needed to go to the records department still.

36.    A young female employee, Ms. Urquiza, greeted Plaintiff at the HR-Records department, who right away asked plaintiff, Are you the substitute teacher? Ms. Urquiza then directed plaintiff to go talk to Gloria Tennon's instead.

37.    Defendant Gloria Tennon told plaintiff that she needed to go to the superintendent's office to get an official form while questioning plaintiff about the reason for her request of the records; Defendant Tennon asked if she was planning to sue the district, if she was securing an attorney, among other.

38.    Defendant Tennon, following directives from Defendant Karen Heeth, denied Plaintiff the right to obtain her personnel records. Defendant Karen Heeth, demanded Plaintiff to "handwrite, sign and dated" a blank piece of paper instead. Plaintiff questioned such request and refused to do it.

39.    Defendant Tennon told plaintiff that if she did not handwrite the paper, "you won't be able to get your file that is what Ms. Heeth asked you to do". Plaintiff asked Ms.Tennon if she treated every requestor in the same unfair way that she was being treated.

40.    Defendant Tennon turned to Ms. Urquiza -who was present the whole time- and told her, "You tell her, Ms. Heeth told you right? She seems not understanding". Then turned back to plaintiff and said: "I think Ms. Urquiza speak Spanish, do you prefer to talk in

Spanish with her?  Defendant Tennon insisted in having Plaintiff to handwrite the blank paper and to get Ms. Urquiza involved in the process; Defendant Tennon made other inappropriate remarks and demands which, at all relevant times, she clearly stated were the "orders and wishes of Karen Heeth".

41.    Right after the incident, Plaintiff walked away to the superintendent's office, Defendant Tennon (very agitated) followed Plaintiff and said that Karen Heeth "would get very upset if you talk to Cheryl Jeffers, and that "Ms. Heeth wants to talk to you instead", Plaintiff ignored her comments.

42.    Plaintiff went to the Superintendent's office and briefly talked to Cheryl Jeffers about the incident, who made no comment; Cheryl Jeffers just went to talk to Defendant Stephanie Brown and told plaintiff that Stephanie Brown would be contacting her that afternoon and said, "I promised you, Marianne Cribbin will meet with you; if you don't hear from Stephanie Brown today, call me or call Marianne Cribbin's direct number", and provided plaintiff with a yellow sticky note with the phone numbers.

43.    Defendant Stephanie Brown failed to contact plaintiff.  However, on or about June 2nd, Defendant Stephanie Brown phoned plaintiff, very upset of the fact that plaintiff had contacted the Superintendent's office.

44.    On Wednesday, June 3, 2015, plaintiff came to make another request of her personnel records. The receptionist, Ms. Trevino, greeted Plaintiff with an odd level of hostility saying that "Stephanie Brown told me that they already talk to you about your file", further stating that defendant Stephanie Brown had already put her on notice about

Plaintiff's case and that this time, "I have specific orders from Marianne Cribbin not to allow you to talk to anybody in the building, specifically, the Superintendent's office".

45.    The receptionist did not allow Plaintiff to make the request of her personnel files; Ms. Trevino went far as to get in a phone conversation regarding Plaintiff's case while Plaintiff was still there; Plaintiff asked to speak with the Superindent's office, Ms. Trevino stated that, "Marianne Cribbin had been very clear, to call the chief of police" to prevent Plaintiff to talk to the Superintendent's.

46.    Ms. Trevino also told Plaintiff, in a very sarcastic manner that, "if you want to talk to Jeffers, try to call the switchboard number, but you know who will be answering".

47.    Defendant Gloria Tennon showed up at the lobby to deliver a message to Plaintiff from Defendant Karen Heeth demanding plaintiff to 'handwrite, sign and dated" a blank piece of paper, stating that "Karen wants you to handwrite this first, otherwise you won't be able to get your records".

48. Plaintiff refused to obey Defendant Karen Heeth's demands, then Defendant Tennon turned to a visitor who was there and discussed details of the plaintiff's case with him. Plaintiff walked away and while she was walking at the parking lot defendant Tennon came behind her, yelling all loud.

49.    Shortly after, Defendant Stephanie Brown placed an angry phone call to plaintiff regarding plaintiff visit to the administration building, demanding an explanation.

50.     Plaintiff called the district switchboard number requesting a transfer to the Superintendent's office; Ms. Trevino, who answered the call, kept saying "I don't understand what you are saying ma'am, do you speak English? What language do you speak?, because we only speak English here", Plaintiff could overheard other persons in the background laughing.

51.     On June 4, 2015, plaintiff brought the issue to the attention of the Superintendent's office requesting a meeting to properly address the issues but no response was ever received.

52.     On June 4, 2015, Defendant Stephanie Brown left another message informing plaintiff that a meeting with Marianne Cribbin had been scheduled for June 11, 2015, however, the meeting was later rescheduled for June 15, 2015.

53.     On June 11, 2015, plaintiff filed a level I grievance.

54.     On June 15, 2015, the meeting with Marianne Cribbin was held. Defendant Cribbin began the meeting by asking Plaintiff, "Tell me what happened", to which Plaintiff stated that "nothing has ever happened", and that she wanted to clarify that with the school's principal.

55.     Defendant Cribbin stated that, "the principal did not meet with you because you were physically aggressive the day you went to the school". Plaintiff asked who was asserting that, Defendant Cribbin said "Celia Silva told Ms. Kennard".

56.     Plaintiff denied the allegation and pointed out to the fact that the school had security cameras. Defendant Cribbin then stated that they just might not had say it right, that "what they mean is that your demeanor was aggressive". Plaintiff replied that the security cameras still might show that was untrue. Defendant Cribbin then stated that "what they meant is that your words were aggressive"…Plaintiff disputed that accusation and suggested to check the footage to demonstrate that all was untrue; Defendant Cribbin stated that she did not know if the school had cameras and that they won't checked them.

57.     Defendant Cribbin then read aloud to Plaintiff portions of what she claimed were statements from alleged witnesses and showed a photo of a child's knee that she allegedly said were the evidence HR had against plaintiff. Defendant Cribbin's statements and assertions were in many regards highly contradictory and inconsistent with prior allegations, including the  reason for termination that Defendant Cribbin were given to Plaintiff; according to Defendant Cribbin, "all the students" were allegedly standing and kneeling, "all day long". Plaintiff disputed the accuracy of all the statements and challenged the allegations and asked why the alleged evidence was not presented to her before.

58.     Defendant Cribbin stated that "they did not have it on May 22, when they spoke to you". Plaintiff asked when did she got them, Defendant Cribbin stated that "it was just given to me today for this meeting" but failed to provide further explanation.

59.     Defendant Cribbin did not allow Plaintiff access to the alleged photo and to the statements, (that were only showed to Plaintiff from a distance) alleging that "this is confidential information, it belong only to students file".

60.    Defendant Cribbin also refused to discuss any of the prior incidents and actions against Plaintiff, she told Plaintiff " I have another meeting to go to, I can't talk to you anymore".

61.    The hearing for level I grievance was not held until July 9, 2015. Plaintiff stated her concerns about not having a fair, unbiased, meaningful hearing giving the fact that defendant, Karen Heeth, who was the person who first accused and made the decision to terminate plaintiff employment, was also the assigned hearing officer.

62.    The hearing was not a fair hearing; for instance, the district's did not present their case against Plaintiff and did not present any of the alleged evidence they claimed to have against her (alleged by Marianne Cribbin on the June 15 meeting) ) and Defendant Spalding (representing the district) prevented Plaintiff to discuss the matters; rather, subjected plaintiff to an improper interrogation.

63.    Plaintiff stated her concerns about being not only discriminated but also retaliated by district's officials for exercising her rights. Plaintiff was at all relevant times consistent with her answers.

64.    Right after the hearing, on or about July 14, 2015, defendant Spalding requested plaintiff to submit her resignation; in exchange, "the district would not give negative references to future employers" and would also remove all the negative documents they had already placed in plaintiff's personnel file.

65.    Plaintiff responded that she had done nothing wrong and rejected the proposal.

66.      On or about July 15,2015, defendant Ellen Spalding sent another intimidating message to plaintiff reminder her that as an "At-Will employee" she did not have many options, threatening to report Plaintiff to the Child Protective Services stating that "even if CPS finds nothing", plaintiff would still have a hard time finding a job.

67.      On July 28, 2015, Defendants Spalding and Defendant Heeth, mailed a level I grievance's response to plaintiff in which they not only denied the grievance but also brought up a number of more additional charges and irrelevant, prejudicial issues against plaintiff but failing to present any evidence.

68.      Plaintiff disagreed with the response and filed a Level II grievance on or about August 12, 2015, for which a hearing was schedule on August 26, 2015.

69.      On August 26, 2015, a hearing from the level II grievance was held. Defendant Spalding exercised total control –including total control over the recording equipment-over the hearing, not allowing the hearing officer to fairly preside the hearing.

70.      Defendant Spalding was at all times intimidating toward plaintiff as well to the hearing officer, not allowing the hearing officer to properly preside the hearing.

71.      Defendant Spalding, among other things, also used legal terminology unknown to Plaintiff as if she were at a court of law.

72.      Defendant Spalding, prevented plaintiff to present all the evidence to the hearing officer and to talk about the other relevant related facts to the case against her. However,

Defendant Ellen Spalding made reference to them, in a distorted, malicious and twisted way to justify all the negative actions against plaintiff.

73.     Defendant Ellen Spalding made available to the hearing officer documents, alleged evidence against Plaintiff that was unfairly not provided to Plaintiff.

74.     Defendant Spalding referred to Plaintiff as "delusional, with memory problems"... and that "in her situation, memory is bad; what she thinks is true it only happens in her memory, in her bad memory", among other things.

75.     On August 27, 2015, plaintiff filed an unemployment claim with the Texas Workforce Commission; TWC found no grounds of misconduct and awarded plaintiff with unemployment benefits on or about September 27, 2015.

76.     Defendants Ellen Spalding and Karen Heeth failed to provide a timely response for the level II hearing, which must had been timely provided to Plaintiff no later than September 10, 2015.

77.     Defendants did not provide a response until September 13, 2015, after Plaintiff contacted the Superintendent's office; however, Defendants failed to provide plaintiff with a copy of the audio recording of the hearing, until about September 18, 2015, after plaintiff contacted the Superintendent's office.

78.     Defendants supplied Plaintiff with a highly edited version of the audio recording of the hearing in which a lot of relevant information had been purposely deleted, among many other irregularities in the edited audio recording.

Defendant's reasons for termination were changed and Defendant's actions were willful, malicious and in complete disregard of the Plaintiff's rights under federal, state and local laws.

## A. Unlawful Retaliation for Engaging in Protected Activities

C.          The foregoing paragraphs are realleged and incorporated by reference herein.

The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because she engaged in activities protected by Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's retaliatory animus. Defendant's actions were intentional, malicious and done with reckless disregard of Plaintiff rights under federal and state laws and regulations.

## B. Hostile Environment and Harassment

D.          The foregoing paragraphs are realleged and incorporated by reference herein.

The Defendant's conduct as alleged in the above paragraphs constitutes hostile and abusive environment in violation of Title VII, and the ADEA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus. Defendant's purposely created a hostile

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment as follows:

1. That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, mental anguish, inconvenience, and all other damages caused by defendants' discriminatory conduct;

2. That the Court grant Plaintiff compensatory damages for Defendants' malicious and recklessly acts of discrimination and indifferent conduct;

3. That the Court grant Plaintiff expenses of job search;

4. That the Court grant Plaintiff restoration of all rights she would have enjoyed if she not been discriminated and retaliated against;

5. That the Court grants Plaintiff expenses of litigation, including reasonable attorneys' fees.

6. That the Court grant temporary, preliminary, and permanent injunctive relief prohibiting Defendants from engaging in further discriminatory conduct;

7. That the Court grant temporary, preliminary, and permanent injunctive relief requiring defendants the removing of all negative, false information in Plaintiff's personnel file, and prohibiting defendants of providing negative references to prospective employers,

8. That the Court grant temporary, preliminary, and permanent injunctive relief requiring defendants to stop disseminating false information against Plaintiff at the schools Plaintiff has worked; and;

9. That the Court grant Plaintiff all other available relief the Court deems just and proper;

**PLAINTIFF DEMAND FOR A JURY TRIAL

Respectfully submitted on this 29th day of February, 2016.

Sagrario E. Silva
10638 Northbrook Drive
Houston, Texas 77043
(713)931-7212

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** 

## DISMISSAL AND NOTICE OF RIGHTS

To: **Evelyn Silva**
    **10638 Northbrook Dr.**
    **Houston, TX 77043**

From: **Houston District Office**
      **Mickey Leland Building**
      **1919 Smith Street, 7th Floor**
      **Houston, TX 77002**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 460-2016-00649 | **Jose T. Vega,**<br>**Investigator** | (713) 651-4941 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Rayford O. Irvin_

**Rayford O. Irvin,**
**District Director**

DEC 0 4 2015

(Date Mailed)

Enclosures(s)

cc: **Marianne Cribbin**
    **Director of Human Resources**
    **SPRING BRANCH ISD**
    **955 Campbell Rd**
    **Houston, TX 77024**

**Lowell Keig, Executive Director**
**TWC/Civil Rights Division**
**101 East 15th Street, Room 144T**
**Austin, TX 78778**



DiC

# Spring Branch Independent School District

**Human Resources Department**
955 Campbell Road, Houston, Texas 77024
Phone/Fax (713) 251-2346
Karen.Heeth@springbranchisd.com
**Karen Heeth, Director of Recruitment and Staff Placement**

May 21, 2015

Evelyn Silva
10638 Northbrook Dr.
Houston, Tx. 77255

Dear Ms. Silva,

We received a report from Westwood Elementary that while you were subbing for Patricia Rimbau class on May 21, 2015 you removed the chairs of some students and allowed them to stand or kneel for a large portion of the day. This kind of extreme measures is not a good practice for classroom management.

As a result of this report we have no choice but to remove your name from our active substitute list. We must put the safety of our children first.

This decision is final so please do not contact any of the campus personnel or go to any of the campuses.

Good luck to you with future endeavors.

Sincerely,

*Karen Heeth*
Karen Heeth

Director of Recruitment and Staff Placement

KH:gt
cc:file

*Inspiring minds. Shaping lives.*
**Duncan F. Klussmann, Ed.D., Superintendent of Schools**

www.springbranchisd.com

Exhibit 3