United States District Court
Southern District of Texas
**ENTERED**
January 24, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAGRARIO E. SILVA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-545 |
| | § | |
| SPRING BRANCH INDEPENDENT | § | |
| SCHOOL DISTRICT, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendants Spring Branch Independent School District ("SBISD"), Karen Heeth ("Heeth"), Marianne Cribbin ("Cribbin"), Gloria Tennon ("Tennon"), and Stephanie Brown's ("Brown") (collectively "SBISD Defendants") Motion to Dismiss for Failure to State a Claim for Which Relief Can Be Granted (Doc. 4), Defendant Ellen Spalding's ("Spalding") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) (Doc. 17), and SBISD Defendants and Defendant Spalding's Motion to Dismiss Under Rule 37 for Failure to Comply with Court-Ordered Depositions (Doc. 67). The court has considered the motions, the responses, the replies, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that all three motions be **GRANTED**.

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 8, Ord. Dated Apr. 1, 2016.

## I.  Case Background

Plaintiff, pro se, filed this action against Defendant SBISD, four of Defendant SBISD's administrative employees, and Defendant SBISD's outside legal counsel, alleging discrimination, retaliation, and hostile work environment pursuant to Title VII of the Civil Rights Act of 1964[2] ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Age Discrimination in Employment Act[3] ("ADEA").

### A.  Factual Background

Plaintiff, a fifty-six-year-old Hispanic female, began working for Defendant SBISD as a substitute teacher in August 2012.[4] During her employment, Plaintiff worked at different elementary schools throughout the district.[5]

On May 21, 2015, Plaintiff substituted in a second-grade class at Westwood Elementary and completed the full day "without any incidents."[6] The following day, Plaintiff was working in a first-grade class at another elementary school when the school principal entered the classroom and informed Plaintiff that she was "being

---

[2]    42 U.S.C. §§ 2000e-2000e-17.

[3]    29 U.S.C. §§ 621-634.

[4]    See Doc. 1, Pl.'s Orig. Compl. p. 2.  Elsewhere, Plaintiff stated that, at the time of the disputed incident, she had been a substitute teacher employed by Defendant SBISD "with over eight years of satisfactory service." Id. p. 3.

[5]    See id.

[6]    Id.

dismissed from the assignment" pursuant to the order of Defendant Heeth, director of recruitment and staff placement.[7]   Defendant Heeth "ordered [P]laintiff to 'go straight home' and prohibited Plaintiff to [sic] establish any type of contact with the superintendent's office or any other school district's staff, including the superintendent and board members."[8]

No one explained to Plaintiff why she was dismissed from her assignment or why she was banned from contacting Defendant SBISD's administrators.[9]   In spite of the directive, Plaintiff went to the office of Defendant Tennon, the substitute teacher specialist, who explained that Plaintiff's dismissal was based on a phone call from the principal of Westwood Elementary.[10]   According to Defendant Tennon, the mother of a girl who was in the second-grade class in which Plaintiff substituted the prior day had appeared at Westwood Elementary, alleging that the girl "had been forced to kneel for most part [sic] of the day, from the early morning until the end of the day."[11]   Defendant Tennon gave no other details except to say that "the girl was bleeding on both of her knees."[12]

---

[7]   Id. pp. 2, 3.

[8]   Id. p. 3.

[9]   Id.

[10]   Id. pp. 2-4.

[11]   Id. p. 4.

[12]   Id.

3

Plaintiff denied the incident ever occurred.[13] Defendant Tennon pressed Plaintiff for details of the day, exploring if any incident occurred that could have given rise to the accusation by the little girl's mother.[14] Plaintiff was consistent in her answers and repeated that "nothing had happened, nobody kneeled, nobody was punished, not a girl, not a boy."[15] Plaintiff told Defendant Tennon that she was being unfairly accused.[16] Defendant Tennon told Plaintiff that the principal of Westwood Elementary was investigating and that Plaintiff would be contacted by Defendant SBISD's human resources department to discuss the results.[17]

Shortly after the conversation with Defendant Tennon, Plaintiff arrived at Westwood Elementary, where she attempted to meet with the principal.[18] The principal was unavailable; so, Plaintiff asked an administrative staff member to tell the principal that the accusation was untrue.[19] Plaintiff also suggested that the principal ask the regular teacher of the class to ask the students about the day Plaintiff substituted.[20]

---

[13]   Id.

[14]   See id. pp. 5-6.

[15]   Id. p. 5.

[16]   Id. p. 6.

[17]   Id.

[18]   See id.

[19]   Id.

[20]   Id.

Defendant Tennon called Plaintiff very soon after her visit to Westwood Elementary.[21]   Defendant Tennon told Plaintiff that the Westwood administrative staff member had reported Plaintiff's visit to the human resources department, accusing Plaintiff of "demanding the name of the girl" whose mother had reported Plaintiff.[22] Defendant Tennon told Plaintiff that Defendant Heeth's instruction not to talk to the Westwood principal had been very clear and any future attempt to contact the principal would result in a call to the police.[23]   Plaintiff pushed back, arguing that she had a "right to clarify the unfair accusations against her, as any other employee would do."[24]   Defendant Tennon told Plaintiff that she was "only a substitute," who was required to obey what Defendant Heeth told Plaintiff to do.[25]   Plaintiff replied that "those orders were unfair and somehow discriminatory" and expressed her intent to continue to seek clarification.[26]   Defendant Tennon said that Plaintiff "must know" that continuing to seek clarification would get her into "more trouble."[27]

That afternoon, Defendant Heeth met with Plaintiff to discuss

---

[21]   Id. p. 7.

[22]   Id.

[23]   Id.

[24]   Id.

[25]   Id.

[26]   Id.

[27]   Id.

the report from the Westwood principal.[28]  Defendant Heeth informed
Plaintiff of Defendant SBISD's decision to terminate Plaintiff's
employment for having instructed several students to "stand and
kneel for large periods of time."[29]  Defendant Heeth memorialized
Plaintiff's termination in a letter.[30]  The letter stated that
Defendant SBISD had received a report from Westwood Elementary
stating that Plaintiff "removed the chairs of some students and
allowed them to stand or kneel for a large portion of the day."[31]
The letter further stated that such "extreme measures" were not
"good practice for classroom management" and that Plaintiff was
removed from the active substitute list as a result.[32]   In the
letter, Defendant Heeth told Plaintiff that the decision was final
and requested that she "not contact any of the campus personnel or
go to any of the campuses."[33]

    Plaintiff asked to meet with the Westwood principal, a request
Defendant Heeth denied.[34]   Defendant Heeth reiterated the
prohibition against Plaintiff's contacting any Defendant SBISD

---

[28]    See id.

[29]    See id. pp. 7-8.

[30]    See id. p. 8.

[31]    Doc. 1, Ex. 2 to Pl.'s Orig. Compl., Letter from Def. Heeth to Pl.
Dated May 21, 2015.

[32]    Id.

[33]    Id.

[34]    See Doc. 1, Pl.'s Orig. Compl. p. 8.

staff or administrators.[35] Defendant Heeth told Plaintiff, "I don't know Ms. Silva how things work in the place you came from, but here, this is the way it works. . . . [N]obody is treating you different [sic], you [sic] just perceiving [sic] things from your own background perspective and you are wrong on that too."[36] Defendant Heeth told Plaintiff to handwrite a letter with Defendant Tennon's assistance,[37] and Plaintiff refused.[38]

Immediately following her meeting with Defendant Heeth, Plaintiff went to the office of Defendant Cribbin, associate superintendent for human resources.[39] Defendant Brown, Defendant Cribbin's executive secretary, told Plaintiff that she would need to make an appointment to see Defendant Cribbin.[40] When Plaintiff requested an appointment, Defendant Brown refused to schedule one stating, instead, that she would call Plaintiff later to let her know.[41] Defendant Brown never called Plaintiff.[42] On May 27, 2015, Plaintiff followed up with Defendant Brown, who said that Defendant

---

[35]   See id.

[36]   Id. p. 9.

[37]   Plaintiff's complaint did not elaborate on the purpose, proposed subject matter, or suggested recipient of the letter.   See id.

[38]   Id.

[39]   See id. pp. 3, 9.

[40]   Id. p. 9.

[41]   Id.

[42]   Id.

Cribbin "still [didn't] have an answer for [Plaintiff]."[43]

On June 1, 2015, Plaintiff stopped by Defendant Cribbin's office to inquire about her meeting request.[44] Defendant Brown was "hostile and rude," refusing to allow Plaintiff into the office.[45] Defendant Brown pushed Plaintiff on the back toward the hallway, stating, "[H]ere is the exit."[46]

Seeking a copy of her personnel file, Plaintiff went to the records department where she was redirected to Defendant Tennon's office after the records employee realized who Plaintiff was.[47] Defendant Tennon directed Plaintiff to the superintendent's office to get an official record-request form and questioned whether Plaintiff was planning to sue Defendant SBISD.[48] Defendant Tennon, under instructions from Defendant Heeth, told Plaintiff to handwrite, sign, and date a request on blank paper in order to access the records.[49] Plaintiff questioned the need to make the request in that method and refused to do it.[50] Defendant Tennon then requested the assistance of a Spanish-speaking employee,

---

[43]    Id.

[44]    Id.

[45]    Id. pp. 9-10.

[46]    Id. p. 10.

[47]    Id.

[48]    Id.

[49]    See id.

[50]    Id.

stating that Plaintiff seemed not to understand.[51]   Defendant Tennon said to Plaintiff, "I think Ms. Urquiza speak[s] Spanish, do you prefer to talk in Spanish with her?"[52]

Plaintiff left for the superintendent's office with Defendant Tennon following and telling Plaintiff that Defendant Heeth "would be very upset" if Plaintiff spoke with the superintendent's executive assistant and that Defendant Heeth wanted to talk to Plaintiff instead.[53]   Unfazed, Plaintiff went to the superintendent's office and spoke with the superintendent's executive assistant, who then spoke with Defendant Brown.[54]   The superintendent's executive assistant promised Plaintiff that Defendant Cribbin would meet with Plaintiff, and provided contact numbers to be used if she did not hear from Defendant Brown by the end of the day.[55]   Defendant Brown did not call by the end of the day but did phone Plaintiff the following day, "very upset of [sic] the fact that [P]laintiff had contacted the Superintendent's office."[56]

On June 3, 2015, Plaintiff returned to the administrative

---

[51]   Id.

[52]   Id. pp. 10-11.

[53]   Id. p. 11.

[54]   See id.

[55]   See id.

[56]   Id.

building to request her personnel records again.[57]  The receptionist "greeted Plaintiff with an odd level of hostility," explaining that Plaintiff was not to be allowed "to talk to anybody in the building, specifically, the Superintendent's office."[58]  The receptionist threatened to call the police to prevent Plaintiff from talking to anyone in the Superintendent's office.[59]  Plaintiff again refused to handwrite, sign, and date a blank piece of paper in order to get her personnel records.[60]

In Plaintiff's presence during this encounter, Defendant Tennon discussed the details of Plaintiff's case with a visitor to the office.[61]  Plaintiff walked away and, while she was "walking at [sic] the parking lot," Defendant Tennon "came behind her, yelling all loud."[62]  Later, Defendant Brown "placed an angry phone call to [P]laintiff regarding [P]laintiff['s] visit to the administration building, demanding an explanation."[63]  Plaintiff called the district switchboard number and requested a transfer to the Superintendent's office.[64]  The receptionist said, "I don't

---

[57]    See id.

[58]    Id. pp. 11-12.

[59]    See id. p. 12.

[60]    See id.

[61]    Id.

[62]    Id.

[63]    Id.

[64]    Id. p. 13.

10

understand what you are saying ma'am, do you speak English?  What language do you speak?[]  [B]ecause we only speak English here."[65] Plaintiff overheard others in the background laughing.[66]

On June 4, 2015, Defendant Brown left a message for Plaintiff that the meeting with Defendant Cribbin was scheduled for June 11, 2015, but was postponed.[67]  On the original meeting day, Plaintiff filed a Level I grievance.[68]

On June 15, 2015, Plaintiff met with Defendant Cribbin who explained that the Westwood principal would not meet with Plaintiff because Plaintiff was "physically aggressive" on the day that she had gone to Westwood Elementary.[69]  Defendant Cribbin refined the description of Plaintiff's behavior, stating instead that her "demeanor was aggressive," and then again refined it by saying that her "words were aggressive."[70]  Plaintiff disputed the accusation and suggested that they find footage from security cameras that would show those statements to be untrue.[71]  Defendant Cribbin did not know if the school had security cameras but told Plaintiff they

---

[65]    Id.

[66]    Id.

[67]    See id.

[68]    Id.

[69]    Id.

[70]    Id. p. 14.

[71]    Id.

would not check them even if they did exist.[72]  Defendant Cribbin

showed Plaintiff ("from a distance") statements from witnesses that

said Plaintiff made all of the students stand and kneel all day and

showed a photo of a child's knee but did not allow Plaintiff to

retain copies of the documents and photo, because, Defendant

Cribbin said, "it belong[ed] only [in the] student[']s file."[73]

On July 9, 2015, the hearing for the Level I grievance was

held with Defendant Heeth serving as the hearing officer.[74]

Plaintiff expressed her concern that the administrator who sent

Plaintiff home after the accusation and who made the decision to

terminate Plaintiff's employment was assigned as the hearing

officer.[75]  Plaintiff harbored other concerns about the hearing:

> 62.  The hearing was not a fair hearing; for
> instance, the district's [sic] did not present their case
> against Plaintiff and did not present any of the alleged
> evidence they claimed to have against her (alleged by
> Marianne Cribbin on [sic] the June 15 meeting)[,] and
> Defendant Spalding (representing the district) prevented
> Plaintiff to [sic] discuss the matters; rather, subjected
> [P]laintiff to an improper interrogation.
>
> 63.  Plaintiff stated her concerns about being not
> only discriminated [against] but also retaliated
> [against] by the district's officials for exercising her
> rights.  Plaintiff was at all relevant times consistent
> with her answers.[76]

---

[72]    See id.

[73]    Id.

[74]    See id. p. 15.

[75]    See id.

[76]    Id.

Less than a week after the hearing, Defendant Spalding, outside counsel representing Defendant SBISD, asked Plaintiff to submit her resignation in exchange for Defendant SBISD's promises to remove negative documents from Plaintiff's personnel file and not to give negative references to future employers.[77]  Responding that she had done nothing wrong, Plaintiff rejected Defendant SBISD's compromise.[78]  The following day, Defendant Spalding sent "another intimidating message" reminding Plaintiff that she was an at-will employee who "did not have many options" and threatening to report Plaintiff to Child Protective Services ("CPS"), which Defendant Spalding explained would cause Plaintiff difficulty in finding another job "even if CPS [found] nothing."[79]

On July 28, 2015, Defendants Spalding and Heeth mailed a response to the Level I grievance "in which they not only denied the grievance but also brought up a number of more additional [sic] charges and irrelevant, prejudicial issues against [P]laintiff but fail[ed] to present any evidence."[80]  Plaintiff disagreed with the response and filed a Level II grievance on August 12, 2015.[81]

---

[77]   Id.

[78]   See id.

[79]   Id. p. 17.  The pages of Plaintiff's complaint are hand numbered. The complaint does not contain pages numbered 16 and 19, but no content appears to be missing as none of the numbered paragraphs are missing.  See id. pp. 15-20.

[80]   Id. p. 17.

[81]   Id.

The hearing on the Level II grievance was held on August 26, 2015.[82] Plaintiff took issue with the manner in which the hearing was conducted:

> 70. Defendant Spalding was at all times intimidating toward [P]laintiff as well [as] to the hearing officer, not allowing the hearing officer to properly preside [over] the hearing.
>
> 71. Defendant Spalding, among other things, also used legal terminology unknown to Plaintiff as if she were at a court of law.
>
> 72. Defendant Spalding[] prevented [P]laintiff to [sic] present all the evidence to the hearing officer and to talk about the other relevant related facts to the case against her.   However, Defendant Ellen Spalding made reference to them, in a distorted, malicious and twisted way to justify all the negative actions against [P]laintiff.
>
> 73. Defendant Ellen Spalding made available to the hearing officer documents, alleged evidence against Plaintiff that was unfairly not provided to Plaintiff.
>
> 74. Defendant Spalding referred to Plaintiff as "delusional, with memory problems" . . . and that "in her situation, memory is bad; what she thinks is true . . . only happens in her memory, in her bad memory[,"] among other things.[83]

On August 27, 2015, Plaintiff filed an unemployment claim with the Texas Workforce Commission ("TWC").[84] On September 27, 2015, having "found no grounds of misconduct," TWC awarded Plaintiff benefits.[85]

---

[82]    Id.

[83]    Id. pp. 17-18.

[84]    Id. p. 18.

[85]    Id.

When Plaintiff did not receive a timely response to the Level II grievance, she contacted the superintendent's office and received the response on September 13, 2015.[86]  Defendant SBISD did not provide Plaintiff with a copy of the audio recording with the response, and Plaintiff contacted the superintendent's office again.[87]  On September 18, 2015, Plaintiff received a copy of the audio recording of the hearing, but it was "highly edited" and was missing "a lot of relevant information [that] had been purposely deleted, among many other irregularities in the edited audio recording."[88]

On November 24, 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[89]  The EEOC issued a Right to Sue letter dated December 4, 2015.[90]

## B.  <u>Procedural Background</u>

On March 2, 2016, Plaintiff filed this action.[91]  In the introductory paragraph of her complaint, Plaintiff stated that she was bringing the action pursuant to Title VII, Section 1981, and

---

[86]   See <u>id.</u>

[87]   <u>Id.</u>

[88]   <u>Id.</u>

[89]   See <u>id.</u> p. 2.

[90]   See <u>id.</u>; Doc. 1, Ex. 1 to Pl.'s Orig. Compl., Dismissal & Notice of Rights.

[91]   See Doc. 1, Pl.'s Orig. Compl.

the ADEA "for national origin, race, age[] discrimination[,] hostile work environment, harassment [sic] and retaliation."[92]

In the body of her complaint where she listed the causes of action raised, Plaintiff alleged only "[u]nlawful [r]etaliation for [e]ngaging in [p]rotected [a]ctivities" and "[h]ostile [e]nvironment and [h]arassment."[93]

> The Defendant's[94] conduct as alleged in the above paragraphs constitutes retaliation against the Plaintiff because she engaged in activities protected by Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's retaliatory animus.
>
> . . . .
>
> The Defendant's conduct as alleged above constitutes hostile and abusive environment in violation of Title VII[] and the ADEA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.[95]

On March 18, 2016, SBISD Defendants filed a motion to dismiss in lieu of an answer.[96]  On April 8, Defendant Spalding waived service, allowing her sixty days from March 30, 2016, the date on which the request for waiver was sent, to filed a responsive

---

[92]    Doc. 1, Pl.'s Orig. Compl. p. 1.

[93]    Id. p. 20.

[94]    Plaintiff refers to Defendants in the singular throughout of causes of action without reference to any one of them in particular.  See id. p. 20.

[95]    Id.  The section on hostile environment and harassment ends with an incomplete sentence, "Defendant's purposely created a hostile."  Id.  According to Plaintiff's page numbering, no page is missing.  See id. pp. 20-21.

[96]    See Doc. 4, SBISD Defs.' Mot. to Dismiss for Failure to State a Cl. for Which Relief Can Be Granted.

16

pleading to Plaintiff's complaint.[97]   On April 14, 2016, Defendant Spalding timely filed a motion to dismiss in lieu of an answer.[98]

Plaintiff requested, and the court granted Plaintiff an extension of time to respond to SBISD Defendants' motion to dismiss.[99]   On May 16, 2016, Plaintiff responded to SBISD Defendants' motion.[100]   On May 20, 2016, Defendants submitted their portion of the joint discovery/case management plan that Defendants' counsel prepared in Plaintiff's absence because she had failed to arrange a time for joint preparation.[101]   Defendants' counsel explained that Plaintiff was emailed a draft of the plan for her comments to which she responded by email that she did not want to be contacted by email and would contact Defendant SBISD's counsel by telephone the following day.[102]   When Plaintiff did not call, Defendants submitted their draft.[103]

On May 27, 2016, Plaintiff notified the court that she was ill and hospitalized and would not attend the scheduling conference set

---

[97]   See Doc. 13, Waiver of Serv.

[98]   See Doc. 17, Def. Spalding's Mot. to Dismiss Pursuant to Rule 12(b)(6).

[99]   See Doc. 12, Pl.'s Mot. for Extension of Time to Respond to SBISD Defs.' Mot. to Dismiss; Doc. 16, Ord. Dated Apr. 14, 2016.

[100]   See Doc. 20, Pl.'s Resp. to SBISD Defs.' Mot. to Dismiss.

[101]   See Doc. 23, Defs.' Portion of Jt. Disc./Case Mgmt. Plan p. 1.

[102]   See id.

[103]   See id.

for that day.[104]  The court reset the scheduling conference for June 10, 2016, and Plaintiff attended.[105]  In addition to setting litigation deadlines, the court provided Plaintiff with an opportunity to clarify the allegations in her complaint.[106] Plaintiff agreed that she was not asserting a claim of age discrimination pursuant to Section 1981 and that she was asserting race and national-origin discrimination against the individual defendants in their individual capacities pursuant to Section 1981, not Title VII.[107]

The court asked what Defendant Spalding did that indicated she was biased against Plaintiff based on race and national origin.[108] Plaintiff said that Defendant Spalding did not mention race and national origin directly, but "the dynamic of the grievances and the way I was treated[] suggested to me that race and national origin was [sic], in fact, a factor in this case."[109]  The court asked, "In what way?"[110]  Plaintiff responded, "Simply because I am not white.  I am not -- I didn't [sic] born in the country.  I have

---

[104]   See Case Mgr. Note Dated May, 27, 2016.

[105]   See Doc. 26, Notice of Resetting; Doc. 27, Min. Entry Ord. Dated June 10, 2016.

[106]   See Doc. 80, Tr. of Hr'g Dated June 10, 2016 pp. 4-36; Doc. 28, Docket Control Ord. Dated June 10, 2016.

[107]   See Doc. 80, Tr. of Hr'g Dated June 10, 2016 pp. 10-11.

[108]   See id. p. 15.

[109]   Id.

[110]   Id.

an accent.  And the fact also that there were comments from other Defendant -- from other employees that say that she don't [sic] understand my language."[111]  Ultimately, Plaintiff explained that she believed that Defendants discriminated against her because they violated their own policies.[112]  When asked, assuming they did, why Plaintiff attributed it to race and national-origin discrimination, Plaintiff said, "I don't know."[113]  When asked if she knew of any similarly situated individuals who were treated differently, Plaintiff said, "Obviously I don't have any comparators because I don't have access to Spring Branch ISD['s] database."[114]

Regarding Defendant Heeth, Plaintiff said that she discriminated on the base of race and national origin by prohibiting Plaintiff from contacting school district administrators against policy.[115]  Plaintiff said that Defendant Heeth made a comment to the effect that she did not know how it was in Plaintiff's country, "but here it's this way."[116]  Plaintiff also complained that Defendant Heeth indicated that she would call the police if Plaintiff contacted the school principal, denied

---

[111]   Id. p. 16.

[112]   Id. p. 17.

[113]   Id.

[114]   Id.

[115]   Id. p. 21.

[116]   Id. p. 22.

Plaintiff access to her personnel file unless Plaintiff signed a blank sheet to request the file,[117] changed the facts regarding the incident precipitating Plaintiff's termination, and served as a hearing officer at Level I of Plaintiff's grievance.[118]  The court asked, "All right, so she has not made any direct comments to you about your national origin or race?"[119]  To which Plaintiff responded, "Obviously not."[120]  Plaintiff agreed with the court's statement that Plaintiff's theory of discrimination was that Defendants violated Defendant SBISD's policies.[121]

Plaintiff stated that Defendant Cribbin treated Plaintiff unfairly in the same way as Defendant Heeth.[122]  According to Plaintiff, Defendant Brown discriminated against Plaintiff by initially denying her access to Defendant Cribbin.[123]  Plaintiff

---

[117]     At the hearing, SBISD Defendants' counsel explained that the form to which Plaintiff referred was for the release of records pursuant to the Texas Public Information Act, which usually takes up to ten days.  See id. p. 23. Counsel represented that the employees of Defendant SBISD were offering Plaintiff an opportunity to review her file immediately based on an informal, handwritten request.  See id. p. 24.  This clarification is not material to the resolution of Defendants' motions to dismiss.

[118]     Id. pp. 23, 26, 27.  At the hearing, SBISD Defendants' counsel explained that the Level I hearing is informal and provides the aggrieved employee or parent an opportunity to express her concern to the lowest level person who was in a position to change the situation.  Id. p. 29.  In Plaintiff's case, he said, that person was Defendant Heeth.  See id.  The court includes this information for clarification only and relies only on Plaintiff's description of the process to resolve the pending motions to dismiss.

[119]     Id. p. 22.

[120]     Id.

[121]     Id.

[122]     See id. p. 32.

[123]     See id. p. 35.

also complained that Defendant Brown harassed Plaintiff by telephoning her and leaving messages stating that, if Plaintiff did not talk to Defendant Brown on the telephone, Defendant Brown would not be able to schedule a meeting or take other action.[124]

During the course of the hearing, the court also addressed Plaintiff's failure to respond timely to Defendant Spalding's motion to dismiss.[125]  Plaintiff argued that Defendant Spalding's motion was untimely, and the court, after reviewing the waiver of service, advised Plaintiff that the motion was timely.[126]  The court granted Plaintiff an extension until July 11, 2016, to respond, and Plaintiff complied.[127]  Defendant Spalding replied, and Plaintiff filed a response to Defendant Spalding's reply.[128]

On July 29, 2016, Plaintiff filed a motion to amend the scheduling order, requesting an extension on the deadline for amending the pleadings until later in the discovery process and the "removal" of an expert deadline due to Plaintiff's inability to

---

[124]    See id. pp. 35–36.

[125]    See id. pp. 13-15, 18-19.  Although Plaintiff's motion for extension of time remained pending at the time of the hearing, the requested extension period had expired nearly two weeks earlier.  See Doc. 19, Mot. for Extension of Time (requesting until May 29, 2016, to respond).

[126]    See Doc. 80, Tr. of Hr'g Dated June 10, 2016 pp. 20-21.

[127]    See id. p. 20; Doc. 27, Min. Entry Ord. Dated June 10, 2016; Doc. 29, Pl.'s Resp. to Def. Spalding's Mot. to Dismiss.

[128]    See Doc. 30, Def. Spalding's Reply; Doc. 31, Pl.'s Resp. to Def. Spalding's Reply Brief.

afford expert reports.[129]  Plaintiff notified the court that she was "unable to initiate depositions at th[at] time due to the same financial issues."[130]  The court denied Plaintiff's motion.[131]

On August 8, 2016, Plaintiff filed a demand for Defendant SBISD "to preserve all and any information that may contain evidence relevant to this case."[132]  On August 15, 2016, Plaintiff filed a Motion to Request Reasons for Denial of Plaintiff's Motion to Modify the Court Scheduling Order and to Reconsider the Order, which the court denied.[133]

On September 12, 2016, Plaintiff filed a motion to compel SBISD Defendants' responses to Plaintiff's requests for initial disclosures and production of documents.[134]  SBISD Defendants filed a response to Plaintiff's motion, and the court set a hearing.[135]  On October 3, 2016, Plaintiff filed a corrected motion to compel to correct dates of service.[136]  Two days later, SBISD Defendants filed

---

[129]   Doc. 32, Pl.'s Mot. to Am. Disc. & Pretrial Ord. p. 1.

[130]   Id.

[131]   See Doc. 33, Ord. Dated Aug. 2, 2016.

[132]   Doc. 34, Demand for Preservation p. 3.

[133]   See Doc. 35, Pl.'s Mot. to Req. Reasons for Denial of Pl.'s Mot. to Modify the Ct. Scheduling Ord. & to Reconsider the Ord.; Doc. 37, Ord. Dated Sept. 20, 2016.

[134]   See Doc. 36, Pl.'s Mot. to Compel.

[135]   See Doc. 38, SBISD Defs.' Response to Notice of Mot.; Doc. 39, Notice of Setting Dated Sept. 22, 2016.

[136]   See Doc. 40, Pl.'s Notice of Corrected Filing of the Mot. to Compel Defs. to Produc. Initial Disclosures & Produc. of Docs. & for Appropriate Sanctions.

a response to the corrected motion, arguing that Plaintiff's initial motion to compel was premature because the deadline for production had not passed and that, by the time Plaintiff filed the corrected motion, SBISD Defendants had produced their responses, of which Plaintiff had acknowledged receipt in an email dated September 22, 2016.[137]  Two days after the filing of SBISD Defendants' response, Plaintiff filed a second corrected motion to correct dates, title of the motion, and the issue with the initial disclosures.[138]  SBISD Defendants filed a response, and Plaintiff replied.[139]  Briefing continued until the hearing, which was reset to October 21, 2016.[140]

On October 21, 2016, the court held a hearing on Plaintiff's motion and corrected motions to compel and denied Plaintiff relief.[141]  The court discussed dates for Plaintiff's deposition.[142] When asked if she was available, Plaintiff said, "I'm not going to be available because inadequate responses [do not deserve] a

---

[137]  See Doc. 41, SBISD Defs.' Resp. in Opp. to Pl.'s Corrected Mot. to Compel Defs. to Produc. Disclosures & Disc. of Docs.

[138]  See Doc. 42, Pl.'s Notice of Corrected Filing of Mot. to Compel.

[139]  See Doc. 43, SBISD Defs.' Resp. to Pl.'s 2nd Notice of Corrected Filing of the Mot. to Compel Defs. to Produc. Initial Disclosure & Produc. of Docs. & for Appropriate Sanctions; Doc. 44, Pl.'s Reply to Defs.' Resp.

[140]  See Doc. 45, Notice of Resetting Dated Oct. 17, 2106; Doc. 47, SBISD Defs.' Surreply; Doc. 48, Pl.'s Mem. of Points in Support of Mot. to Compel; Doc. 50, Pl.'s Submission of Exs. Inadvertently Forgotten.

[141]  See Doc. 49, Min. Entry Ord. Dated Oct. 21, 2016; Doc. 81, Tr. of Hr'g Dated Oct. 21, 2016.

[142]  See Doc. 81, Tr. of Hr'g Dated Oct. 21, 2016 pp. 17–19.

deposition. . . . And there is a lot of case law about it."[143]  The court explained that disagreeing with a court ruling was not a legitimate reason not to participate in discovery:  "That is not how this works.  This is your lawsuit.  If I order that your deposition be taken and you fail to appear, your lawsuit can be dismissed as a sanction for failing to comply with a [c]ourt [o]rder."[144]

When Plaintiff continued to argue with the court about the ruling on the motion to compel, the court explained that the recourse was to appeal the decision to the district judge.[145]  The court set Plaintiff's deposition for November 9, 2016, at the courthouse.[146]  In response to the court's question whether it was clear that Plaintiff needed to appear for her deposition on November 9, 2016, Plaintiff said that it was not clear because the court's decision on the motion to compel was not based on facts or law.[147]  The court repeated that the procedure was to appeal that decision to the district judge and advised that Plaintiff do so quickly and request a stay from the district judge on the order to

---

[143]    Id. p. 19 (indicating that Plaintiff actually said "doesn't deserve" rather than "to be served in" as typed in the transcript).

[144]    Id.

[145]    See id. p. 20.

[146]    See id.; Doc. 49, Min. Entry Ord. Dated Oct. 21, 2016.

[147]    Doc. 81, Tr. of Hr'g Dated Oct. 21, 2016 p. 20.

24

appear for her deposition on November 9, 2016.[148]

In the weeks following the hearing, Plaintiff filed two additional briefs on the motion to compel, a related affidavit, and a motion seeking the court's reasons for denying the motion to compel.[149] On November 8, 2016, Defendants filed a motion to compel Plaintiff's attendance at her deposition scheduled at the courthouse the following day.[150] Defendants represented that Plaintiff notified them by email on November 4, 2016, that she would not be available for the scheduled deposition.[151] According to Defendants, they solicited from Plaintiff the reason Plaintiff was unavailable and alternative dates but were unsuccessful on both fronts.[152] Based on Plaintiff's stated intention not to attend, Defendants canceled the deposition and filed a motion to compel Plaintiff's deposition.[153] The court granted the motion to compel.[154]

On November 11, 2016, Defendants supplemented their motion to

---

[148]    See id. pp. 20-21.

[149]    See Doc. 51, Pl.'s Mem. of Points in Support of Mot. to Compel; Doc. 52, Pl.'s Mem. of Law in Opp. to SBISD Defs.' Surreply; Doc. 54, Pl.'s Aff. of Correction of Typographical & Spelling Errors in Pl.'s Resp. to Def.'s Surreply; Doc. 57, Pl.'s Mot. to Req. Reasons for Denial of Mot. to Compel.

[150]    See Doc. 53, Defs.' Mot. to Compel Attendance at Dep. by Pl.

[151]    See id. p. 2.

[152]    See id.

[153]    See id.

[154]    Doc. 64, Ord. Dated Nov. 28, 2016.

compel Plaintiff's deposition with a copy of a letter they received on the afternoon of the originally scheduled deposition, which requested clarification on the mechanics of the deposition and, in advance, "specific lists of all the specific topics each of the Defendants pretended [sic] to cover and/or introduced [sic] at the deposition."[155]

On November 15, 2016, twenty-four days after the court advised her to do so and six days after the scheduled deposition for which she neither sought a stay nor appeared, Plaintiff filed objections to the undersigned's order on the motion to compel and order setting Plaintiff's deposition.[156]   On November 16, 2016, the court's case manager contacted Plaintiff to get available dates for a hearing on Defendants' motion to compel Plaintiff's deposition, but Plaintiff "was very disruptive and did not provide a date."[157] The court set a date for the hearing and noticed all parties.[158]   On November 17, 2016, SBISD Defendants responded to Plaintiff's objections.[159]   On November 22, 2016, Plaintiff filed a notice of errors to correct her objections.[160]   On November 23, Plaintiff

---

[155]    Doc. 56-1, Ex. A to SBISD Defs.' Suppl. to Mot. to Compel Attendance at Dep. by Pl., Letter from Pl. to Christopher Gilbert Dated Nov. 5, 2016 p. 1.

[156]    See Doc. 58, Pls.' Objs. to Magis. J.'s Ord.

[157]    See Case Mgr. Note Dated Nov. 16, 2016.

[158]    See Doc. 59, Notice of Setting Dated Nov. 17, 2016.

[159]    See Doc. 60, SBISD Defs.' Resp. to Pl.'s Objs. to Magis. J.'s Ord.

[160]    See Doc. 61, Pl.'s Notice of Errors on the Filing of Objs. to Magis. J.'s Ord.

filed an opposition to the hearing and to the motion to compel Plaintiff's deposition.[161]

On November 28, 2016, the court held the scheduled hearing on Defendants' motion to compel Plaintiff's deposition.[162]  Plaintiff did not appear.[163]   In a written order, the court granted Defendants' motion and set Plaintiff's deposition for December 7, 2016, at the courthouse.[164]  The court forbade either party from unilaterally changing the date of the deposition without a written court order.[165]  The court warned Plaintiff that she must attend the deposition regardless of the status of her objections to the undersigned's discovery rulings.[166]  On December 2, 2016, Plaintiff filed a motion to disqualify the undersigned.[167]

On December 5, 2016, Plaintiff faxed to SBISD Defendants' counsel a letter informing him that she would not attend the deposition.[168]  Among the reasons listed by Plaintiff that prevented

---

[161]    See Doc. 62, Pl.'s Opp. to the Hr'g & SBISD Defs.' Mot. to Compel Pl.'s Dep.

[162]    See Doc. 63, Min. Entry Dated Nov. 28, 2016.

[163]    See id.

[164]    See Doc. 64, Ord. Dated Nov. 28, 2016.

[165]    See id. p. 2.

[166]    See id.

[167]    See Doc. 65, Pl.'s Mot. to Disqualify.

[168]    See Doc. 67-1, Ex. 1-B to Defs.' Mot. to Dismiss Under Rule 37 for Failure to Comply with Ct.-Ordered Dep., Letter from Plaintiff to Christopher Gilbert Dated Dec. 5, 2016.

her attendance were her complaints about: (1) the shortness and
lack of detail of the court's order compelling her deposition; (2)
SBISD Defendants' failure to file a motion to compel before she
filed the objections to undersigned's discovery order;[169] (3) SBISD
Defendants' failure to answer her November 11, 2016 letter in which
she asked for clarification on the mechanics and topics of the
deposition;[170] and (4) the effect of the holiday season on her
availability.[171]   Plaintiff also expressed her unwillingness to
respond to motions, letters, and emails unless convinced it would
be worth her time.[172]  The letter stated, "From now on, please treat
any non-response on my part as merely a refusal to address your
unsubstantiated allegations[] and not as any admission on my
part."[173]

On December 6, 2016, the district judge entered an order
explaining that the court could not consider Plaintiff's objections
to the magistrate judge's discovery order without the transcript of
the hearing and that Plaintiff bore the responsibility for ordering

---

[169]    This is not an accurate reading of the docket sheet.  See Doc. 53,
SBISD Defs.' Mot. to Compel Attendance at Dep. by Pl.; Doc. 58, Pl.'s Objs. to
Magis. J.'s Ord.

[170]    This is inaccurate.  See Doc. 74-6, Ex. F to SBISD Defs.' Resp. in
Opp. to Pl.'s Letter in Lieu of Mot. in Resp. to J. . Sim Lake's Ord. from Dec.
8, 2016, Letter From Christopher B. Gilbert to Plaintiff Dated Nov. 11, 2016.

[171]    See Doc. 67-1, Ex. 1-B to Defs.' Mot. to Dismiss Under Rule 37 for
Failure to Comply with Ct.-Ordered Dep., Letter from Plaintiff to Christopher
Gilbert Dated Dec. 5, 2016 pp. 1-2.

[172]    See id. p. 2.

[173]    Id.

a transcript.[174]   The court also explained that the objections and Plaintiff's deposition were independent of each other and ordered Plaintiff to attend her deposition on December 7, 2016.[175]   The court warned, "Plaintiff's failure to attend this deposition may result in sanctions, including dismissal of this suit."[176]

On December 7, 2016, Plaintiff failed to appear for her deposition.[177]   Defendants' counsel took a certificate of nonappearance and, later, filed the pending motion to dismiss pursuant to Rule 37.[178]

On December 9, 2016, the Clerk's office entered a document with a docket entry date of December 7, 2016, that Plaintiff had mailed to the court entitled "Plaintiff's Response to the SBISD Defendants' Deposition of Plaintiff Ordered by the Court on November 29, 2016."[179]   Although it was labeled a response and contained an introductory sentence, the document in substance was a copy of the letter Plaintiff had faxed to SBISD Defendants'

---

[174]   See Doc. 66, Order Dated Dec. 6, 2016.   The court noted that the transcript would be at no charge to Plaintiff because she was proceeding informa pauperis.   See id. p. 2.

[175]   See id. pp. 2-3.

[176]   Id. p. 3.

[177]   See Doc. 67-1, Ex. 1 to Defs.' Mot. to Dismiss Under Rule 37 for Failure to Comply with Ct.-Ordered Dep., Certificate of Nonappearance.

[178]   See id.; Doc. 67, Defs.' Mot. to Dismiss Under Rule 37 for Failure to Comply with Ct.-Ordered Dep.

[179]   See Doc. 68, Pl.'s Resp. to SBISD Defs.' Dep. of Pl. Ordered by the Ct. on Nov. 29, 2016.

counsel on December 5, 2016, informing him that she would not attend the court-ordered deposition.[180]

On December 9, 2016, Plaintiff filed Plaintiff's Letter in Lieu of Motion in Response to Judge Sim Lake's Order from December 8, 2016, in which she addressed various aspects of his order.[181] She reiterated complaints about the undersigned's rulings on discovery, claiming that the undersigned did not state any reasons in support of the rulings and that the audio recording of the hearings did not accurately reflect what occurred.[182] Plaintiff took issue with the court's characterization of Plaintiff's position as a refusal to appear at her November 9, 2016 deposition, stating that she had objected to the ruling because it was unfair.[183] Plaintiff complained that the court's order of December 6, 2016, which stated that she "must attend her deposition as scheduled" was "incorrect because the court had not considered the facts and legitimate concerns stated by Plaintiff."[184] Plaintiff concluded:

> To sum the preceding discussion, Plaintiff believes that
> the magistrate judge's decisions were not based on a fair

---

[180]    Compare id. with Doc. 67-1, Ex. 1-B to Defs.' Mot. to Dismiss Under Rule 37 for Failure to Comply with Ct.-Ordered Dep., Letter from Plaintiff to Christopher Gilbert Dated Dec. 5, 2016.

[181]    See Doc. 72, Pl.'s Letter in Lieu of Mot. in Resp. to J. Sim Lake's Ord. from Dec. 8, 2016.

[182]    Id. p. 2.

[183]    See id. pp. 2-3.

[184]    Id. p. 4.

and impartial view of the facts; and that the omission of
relevant facts in prejudice of Plaintiff's case, make
evident that a dismissal of Plaintiff's complaint or the
imposition of sanctions under these circumstances will be
extremely unfair and contrary to federal laws and the
local rules of discovery, in addition to the violation of
Plaintiff's constitutional rights to a fair and impartial
process.[185]

Defendants later filed a response to Plaintiff's letter to the

court, countering various of her assertions and submitting

communications between their attorneys and Plaintiff.[186]

In the following days, the parties continued to file briefs on

Plaintiff's motion to disqualify.[187]   On December 15, 2016, the

court denied Plaintiff's motion seeking clarification of the

court's reasons for denial of the motion to compel.[188]   On the same

day, Defendants filed a joint motion to abate, and the court

granted the motion, staying the deadlines for the completion of

discovery and the filing of dispositive motions until the court

ruled on the pending motions and objections.[189]   On December 22,

---

[185]     Id.

[186]     See Doc. 74, SBISD Defs.' Resp. in Opp. to Pl.'s Letter in Lieu of
Mot. in Resp. to J. Sim Lake's Order from Dec. 8, 2016.

[187]     See Doc. 70, SBISD Defs.' Resp. in Opp. to Pl.'s Mot. to Disqualify
the Magis. J.; Doc. 76, Pl.'s Verified Supplemented Mot. for Disqualification &
Supporting Mem. of Law; Doc. 77, Pl.'s Aff. in Support of Mot. to Disqualify
Magis. J.; Doc. 79, SBISD Defs.' Resp. in Opp. to Pl.'s Verified Supplemented
Mot. for Disqualification & Pl.'s Aff. in Support of Mot. to Disqualify Magis.
J.

[188]     Doc. 73, Ord. Dated Dec. 15, 2016.

[189]     See Doc. 75, Jt. Mot. to Abate; Doc. 78, Ord. Dated Dec. 19, 2016.

2016, the court denied Plaintiff's motion to disqualify.[190]

On December 27, 2016, Plaintiff filed a discovery status report and a motion for an extension of time to respond to Defendants' motion to abate and to Defendants' opposition to Plaintiff's motion to disqualify.[191] SBISD Defendants responded to Plaintiff's discovery status report and motion for an extension of time.[192] The court denied as moot Plaintiff's request for extensions of time, explaining that the court had already ruled on those motions.[193]

On January 17, 2017, Plaintiff filed Plaintiff's Letter in Response to the Magistrate Judge's Orders and to the Defendants' Motions.[194] Therein, Plaintiff reasserted her objections to the undersigned's various rulings.[195] She complained that it was unfair for Defendants to file and the court to rule on motions during the Thanksgiving and Christmas holiday, "knowingly [sic] (or should have known) that Plaintiff would be unable to respond."[196] She

---

[190]   See Doc. 84, Ord. Dated Dec. 22, 2016.

[191]   See Doc. 85, Pl.'s Disc. Status Report; Doc. 86, Pl.'s Mot. for Extension of Time to Respond to Defs.' Mot. to Abate & Defs.' Opp. to Mot. to Disqualify Magis. J.

[192]   See Doc. 87, SBISD Defs.' Resp. to Pl.'s Disc. Status Report; SBISD Defs.' Resp. in Opp. to Pl.'s Mot. for an Extension of Time.

[193]   See Doc. 89, Ord. Dated Dec. 28, 2016.

[194]   See Doc. 91, Pl.'s Letter in Resp. to the Magis. J.'s Ords. & to Defs.' Mots.

[195]   See id.

[196]   Id. p. 2.

opined that it was not in "good faith to force the Plaintiff to respond to that many documents as Plaintiff has neither adequate time nor resources to examine all of the defendants' lengthy motions and alleged exhibits, to which Plaintiff also objects, and the lengthy and confusing court's orders."[197]  She stated that her "lack of legal expertise and resources" made it "difficult, if not impossible, to properly respond to each and every allegation, as the court apparently expected."[198]

Plaintiff explained that she was "not in the position to respond in a fair and conventional way at this time" but objected to each of the undersigned's orders and opposed each of the defendants' motions.[199]  She accused the undersigned and Defendants of misrepresenting and mischaracterizing the facts.[200]  She stated that she did not want her inability to respond to be deemed a lack of opposition, admission, or agreement.[201]  Rather, she said, it "[i]s simply Plaintiff's best option under the actual circumstances, based on the experience with this court and the behavior of the magistrate judge during the course of this case."[202]

---

[197]   Id.

[198]   Id.

[199]   Id.

[200]   See id.

[201]   See id.

[202]   Id.

Plaintiff continued, "It is unlikely that the facts and law will be ever [sic] taken into consideration to decide matters in a fair and impartial manner in this case, as has been the pattern with this court."[203] Plaintiff accused Defendants of violating the law and codes of ethics and accused the undersigned of acting with prejudice, retaliating against Plaintiff, not addressing the merits of the case, and not timely notifying Plaintiff of the court orders.[204] SBISD Defendants filed a response on the same day that Plaintiff's motion was filed in which they characterized Plaintiff's filing as a response to their Rule 37 motion to dismiss.[205]

On January 19, 2017, the Clerk's office entered a document with a docket entry date of January 18, 2017, a document that Plaintiff had hand-delivered to the court. Therein, Plaintiff claims that Defendants did not send Plaintiff a copy of their Rule 37 motion to dismiss and she was not aware of it until January 17, 2017, when she was reviewing the docket sheet at the courthouse.[206]

---

[203]   Id.

[204]   See id. pp. 2-3.

[205]   See Doc. 92, SBISD Defs.' Reply to Pl.'s Letter in Resp.

[206]   See Doc. 93, Pl.'s Letter in Resp. to the Magis. J.'s Ords. & to Defs.' Mots. SBISD Defendants submitted the signed certified mail return receipt for the delivery of the motion, which reflects that Plaintiff received the motion on December 13, 2016. See Doc. 94-1, Ex. A to SBISD Defs.' Reply to Pl.'s Letter in Resp. to the Magis. J.'s Ords. & to the Defs.' Mots., Certified Mail Receipt. Although the evidence submitted by SBISD Defendants leaves no doubt that Plaintiff received the motion, the court also notes that its order dated December

In the filing, Plaintiff also claims that the docket contains inaccuracies and inconsistencies and that the undersigned's orders contain inaccurate information.[207]

Based on Plaintiff's latest filings, the court finds that Defendants' Rule 37 motion to dismiss is ripe for consideration. The court takes that motion, as well as the previously filed motions to dismiss, under advisement at this time. The court begins with the earlier-filed motions.

## II. Motions to Dismiss Pursuant to Rule 12

SBISD Defendants and Defendant Spalding's motions to dismiss for failure to state a claim challenge Plaintiff's entire complaint on legal and factual bases.

## A. Dismissal Standard

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 803 n.44 (5th Cir.

---

28, 2016, which specifically mentions Defendants' motion and extends Plaintiff's time for response, was sent via FedEx and email to Plaintiff. See Doc. 89, Order Dated Dec. 28, 2016 p. 4; Docket Entry Dated Dec. 28, 2016 (stating that the order was sent via FedEx to Plaintiff and that receipt is attached); Docket Entry Dated Dec. 29, 2016 (stating that the order was emailed to Plaintiff). Plaintiff's claim that she was unaware of the motion until January 17, 2017, is not credible.

[207]   See id. pp. 2-3.

2011)(quoting <u>True v. Robles</u>, 571 F.3d 412, 417 (5th Cir. 2009)).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. 678. A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555. In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. 678.

## B.  <u>Discussion</u>

Considering Plaintiff's complaint and her representations in the hearing on June 10, 2016, and in her responsive briefs to Defendants' motions to dismiss, the court discerns Plaintiff's intent to raise the following causes of action: (1) Title VII race and national-origin discrimination, hostile work environment, and retaliation against Defendant SBISD only; (2) Section 1981 race discrimination and retaliation against the individual SBISD Defendants and Defendant Spalding only; and (3) ADEA age

discrimination against Defendant SBISD only.[208]  The analysis of the pending motions to dismiss that are based on the failure to state a claim hinge on whether Plaintiff stated sufficient factual allegations to support each element of each cause of action.[209]

### 1. Discrimination

Title VII prohibits employers from refusing to hire, terminating, or otherwise "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a). Section 1981[210] provides an additional avenue of recourse for persons who experience discrimination in employment because of

---

[208]    Plaintiff did not concede that her ADEA claims were barred against the individual defendants; however, the law is clear on the point.  See Medina v. Ramsey Steel Co., 238 F.3d 674, 686 (5th Cir. 2001)(quoting Stults v. Conoco, Inc., 76 F.3d 651, 655 (5th Cir. 1996))(stating that "[t]he ADEA 'provides no basis for individual liability for supervisory employees.'").

In her response to Defendant Spalding's Rule 12 motion to dismiss, Plaintiff confusingly states that her "complaint does not assert[] any specific claim under section 1981 against any of the individual defendants."  Doc. 29, Pl.'s Resp. to Def. Spalding's Mot. to Dismiss p. 4.  The court assumes that this statement was made in error and considers Plaintiff's Section 1981 claims against the individual defendants.

[209]    Before analyzing each of Plaintiff's claims, the court addresses Plaintiff's assertion that Defendant Spalding's motion to dismiss was late, which put Defendant Spalding in a default position.  Although the court previously addressed this assertion at the June 10, 2016 hearing, the court reviewed the case record for a second time and once again finds that Defendant Spalding's motion was filed within the period allowed by the waiver of service and, thus, was timely.

[210]    Section 1981 prohibits racial discrimination in the making or enforcing of contracts.  42 U.S.C. § 1981(a).  As defined by the statute, the phrase "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

race. See 42 U.S.C. § 1981. The ADEA, in language very similar to Title VII, prohibits employers from refusing to hire, terminating, or otherwise "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a).

All three types of claims share the same rubric of analysis. See Dilworth v. Continental Const. Co., 282 F. App'x 330, 332 (5th Cir. 2008)(unpublished)(quoting Raggs v. Miss. Power & Light Co., 278 F.3d 463, 468 (5th Cir. 2002))("Claims of racial discrimination brought under Title VII or [Section] 1981 are considered 'under the same rubric of analysis'"); Meinecke v. H & R Block of Houston, 66 F.3d 77, 83 (5th Cir. 1995)("The same evidentiary procedure for allocating burdens of proof applies to discrimination claims" under Title VII and the ADEA).

In an employment discrimination case, a plaintiff may prove a claim either through direct or circumstantial evidence. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000). In the absence of direct evidence, courts analyze discrimination claims under the burden-shifting approach first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and modified in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), and Rachid v. Jack In The Box, Inc., 376 F.3d 305 (5th Cir. 2004). Under this "modified McDonnell Douglas approach," a plaintiff may trigger a presumption of discrimination by establishing a prima facie case. Rachid, 376

38

F.3d at 312.

A prima facie case of discrimination requires the plaintiff to show "that she: (1) is a member of a protected class; (2) was qualified for her position;" (3) suffered an adverse employment action; and (4) was replaced by someone who is not a member of the protected class to which she belongs or was treated less favorably than similarly situated employees who were not members of the protected class to which she belongs.  See Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001)(addressing race discrimination claim).

In this case, Plaintiff conceded in open court that her complaints are not based on direct evidence of discrimination. Based on circumstantial evidence, Plaintiff's allegations satisfy the first three elements of a prima facie case.  As to the fourth element, Plaintiff made no allegation that she was replaced by someone outside of her protected class and indicated at the June 10, 2016 hearing that she would rely on evidence that similarly situated employees outside of the protected class to which Plaintiff belongs received more favorable treatment.  However, Plaintiff admitted that she had no knowledge whether any similarly situated individuals were treated differently but expected to make that determination after she discovered Defendant SBISD's employment records.  For purposes of this memorandum and recommendation, the court assumes Plaintiff will discover evidence

39

to support that aspect of her claim.

After a plaintiff has established a prima facie case, the burden shifts to the defendant to proffer legitimate, nondiscriminatory reasons for its actions. Okoye, 245 F.3d at 513. If the defendant satisfies this burden, then the presumption of discrimination dissolves. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000); Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

Here, Plaintiff's complaint provides the reason given for her termination.  Plaintiff alleged that Defendant SBISD terminated her employment due to a report from Westwood Elementary stating that Plaintiff "removed the chairs of some students and allowed them to stand or kneel for a large portion of the day" and that such "extreme measures" were not "good practice for classroom management."[211]  That qualifies a legitimate reason for terminating an elementary substitute teacher.

The plaintiff must then offer evidence to create an issue of fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." Rachid, 376

---

[211]    Doc. 1, Pl.'s Orig. Compl. p. 8; Doc. 1, Ex. 2 to Pl.'s Orig. Compl., Letter from Def. Heeth to Pl. Dated May 21, 2015.

F.3d at 312 (internal quotation and alteration marks omitted)(quoting <u>Rishel v. Nationwide Mut. Ins. Co.</u>, 297 F. Supp.2d 854, 865 (M.D.N.C. 2003)); <u>but see</u> <u>Gross v. FBL Fin. Servs.</u>, Inc., 557 U.S. 167, 175-78 (2009)(precluding mixed-motive analysis in ADEA cases).  Evidence of the falsity of an employer's stated justification may be enough, in some cases, to raise a fact issue on pretext, but only if a reasonable jury could conclude that the action was discriminatory.  <u>Reeves</u>, 530 U.S. at 147-48.

As factual support for an inference of pretext, Plaintiff's complaint and representations to the court rely almost entirely on actions that Plaintiff perceived as unfair but could not connect to her race, national origin, or age and that are not ultimate employment actions.  Among many examples cited by Plaintiff: (1) banning Plaintiff from contacting Defendant SBISD's administrators or the elementary school's principal; (2) threatening to contact the police; (3) making unfair accusations; (4) referring to Plaintiff as *only* a substitute; (5) refusing to schedule an appointment with Defendant Cribbin; (6) failing to call Plaintiff; (7) acting hostile and rude; (8) physically pushing Plaintiff; (9) requiring a signature on a blank piece of paper for the immediate release of Plaintiff's personnel file; (10) discussing details of Plaintiff's case with a visitor to the office; (11) yelling at Plaintiff; (12) refusing to check for security camera footage; (13) allowing Defendant Heeth to serve as the hearing officer at Level

I of Plaintiff's grievance; (14) holding an unfair hearing; (15) asking Plaintiff to submit a resignation letter as a compromise; (16) intimidating Plaintiff; and (17) after an initial refusal, providing Plaintiff an altered copy of the audio recording of the hearing.

These post-termination offenses are in no way connected to Plaintiff's protected characteristics. Her subjective belief that they were based on discriminatory motives is insufficient. See Rodriquez v. Wal-Mart Stores, Inc., 540 F. App'x 322, 327 (5ᵗʰ Cir. 2013)(unpublished)("An employee's subjective belief is insufficient to establish discriminatory motive.").

Plaintiff alleged a much, much shorter list of incidents that remotely implicate race, national origin, or age: (1) Defendant Heeth referenced where Plaintiff "came from" in explaining how things work "here;"[212] (2) at the same time, Defendant Heeth said that no one was treating Plaintiff differently, she was just perceiving things from her own background perspective; (3) Defendant Tennon offered to have another employee translate Defendant Tennon words into Spanish; (4) the receptionist at the district switchboard said that she could not understand Plaintiff and asked what language Plaintiff spoke, commenting that only English was spoken at the district offices; and (5) Defendant Spalding referred to Plaintiff as delusional with memory problems.

---

[212]    Doc. 1, Pl.'s Orig. Compl. p. 9.

42

These offenses are insufficient to raise a fact issue of
pretext for at least two reasons.  First, they are not clearly
discriminatory in content.  Second, they cannot be connected to her
termination because they all occurred after the decision to
terminate Plaintiff had been made and communicated to Plaintiff.
Third, they are stray remarks by a variety of people, only one of
whom appeared to have played a role in the decision to terminate
Plaintiff.

Plaintiff alleged that the details of the incident giving rise
to her termination differed with each account Defendants gave her
and that this provides evidence of the falsity of the reason for
her termination.  The inconsistency of the accounts, which was
minor, does not raise a material issue of fact on falsity in this
case.  The details, specifically, the number of students and the
amount of time they were required to kneel or stand,[213] evolved as
Defendant SBISD investigated the allegations against Plaintiff.
Plaintiff maintained that she had not forced any student to kneel
or stand for an extended period.  Plaintiff's allegations do not

---

[213]     The first account, which Defendant Tennon told her immediately after
Defendant Heeth had told Plaintiff to go home pending an investigation, was that
a mother had called the school to report that Plaintiff had forced her daughter
to kneel for most of the day.  Doc. 1, Pl.'s Orig. Compl. pp. 3-4.  Later that
afternoon, Defendant Heeth met with Plaintiff to discuss the principal's report,
and the story was expanded to include several students whom Plaintiff required
to stand and kneel for long periods.  Id. pp. 7-8.  At that time, Defendant Heeth
provided Plaintiff with a letter that stated Plaintiff removed some of the
students' chairs and required them to stand or kneel for a large portion of the
day.  Doc. 1, Ex. 2 to Pl.'s Orig. Compl., Letter from Def. Heeth to Pl. Dated
May 21, 2015.  After an investigation had been completed, Defendant Cribbin
showed Plaintiff statements from witnesses that stated Plaintiff made all of the
students stand and kneel all day.  Doc. 1, Pl.'s Orig. Compl. p. 14.

suggest that Defendant SBISD's reasons for termination were "false or unworthy of credence." <u>Delaval v. PTech Drilling Tubulars, L.L.C.</u>, 824 F.3d 476, 480 (5th Cir. 2016)(quoting <u>Laxton v. Gap Inc.</u>, 333 F.3d 572, 578 (5th Cir. 2003)).  But, even assuming that the reason was false, no allegations would allow a reasonable jury to find that Plaintiff's belief that she suffered discrimination was reasonable.  <u>Cf. id.</u> (finding, on summary judgment, that no evidence supported the reasonableness of the plaintiff's belief that he had been discriminated against).

Plaintiff's allegations fail to raise an inference of race, national-origin, or age discrimination.

## 2.  Hostile Work Environment

In order to maintain a claim of hostile work environment based on race discrimination, a plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on a protected characteristic; (4) "the harassment affected a term, condition, or privilege of employment;" and, in cases of harassment alleged against coworkers, (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. <u>Frank v. Xerox Corp.</u>, 347 F.3d 130, 138 (5th Cir. 2003).  Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the

conduct is physically threatening or humiliating, rather than merely offensive, and the degree to which the conduct unreasonably interferes with an employee's work performance. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 347 (5th Cir. 2007).

Discourtesy, rudeness, teasing, offhand comments, and isolated incidents (unless extremely severe) do not amount to "discriminatory changes in the terms and conditions of employment." Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264 (5th Cir. 1999) (internal quotations omitted)(quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). The conduct about which the plaintiff complains must be both objectively and subjectively offensive. E.E.O.C. v. Boh Bros. Constr. Co., L.L.C., 731 F.3d 444, 460 n.15 (5th Cir. 2013)(quoting Shepherd v. Comptroller of Pub. Accounts of the State of Tex., 168 F.3d 871, 874 (5th Cir. 1999)). A hostile work environment is one in which the abuse is continuous, not simply episodic. See Faragher, 524 U.S. at 787 n.1.

Plaintiff's allegations of harassment are not based on a protected category. As discussed above, the harassment of which Plaintiff complains is that Defendants failed to follow Defendant SBISD's policies and prohibited her from experiencing a fair and timely grievance process on her termination. The incidents that even remotely implicated a protected category were too few and too minor to be either severe or pervasive. Moreover, the alleged

harassment occurred after Plaintiff was terminated and, thus, could not have affected her employment.  No reasonable jury could find for Plaintiff based on her allegations.

Plaintiff's allegations fail to raise an inference of hostile work environment.

### 3.  Retaliation

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action.  Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 439 (5th Cir. 2005). Protected activity includes complaining to supervisors about acts of unlawful discrimination.  See 42 U.S.C. § 2000e-3(a).

According to Plaintiff's complaint, she first said anything about discrimination when, after Defendant Tennon told Plaintiff that she was only a substitute and was required to obey Defendant Heeth's orders, Plaintiff said, "[T]hose orders were unfair and somehow discriminatory."[214]  The only other time that Plaintiff complained of discrimination was at the hearing when she stated that she had not only been discriminated against but had also been retaliated against for exercising her rights.

The first of these complaints occurred after she was removed from her assignment pending investigation of the allegations

---

[214]    Doc. 1, Pl.'s Compl. p. 7.

46

against Plaintiff.  Although Plaintiff was terminated a few hours later, nothing in Plaintiff's complaint suggests a causal connection between her vague allegation of discrimination after she was removed from her assignment and her subsequent termination on the same grounds.  The second of Plaintiff's discrimination complaints occurred during the grievance process, well after her termination, which dismisses any possibility that her termination was retaliatory.  More importantly, though, Plaintiff's complaints of discrimination were so vague that the reports do not rise to the level of protected activity.

Plaintiff's allegations suggest that she believed she was being retaliated against for exercising her right to challenge her termination, not for filing a complaint of discrimination.  Retaliation of that sort is not protected by federal law, particularly where, as here, Plaintiff's allegations do not suggest any illegal motive in Defendants' conduct.

Plaintiff's allegations fail to raise an inference of retaliation.

## C.  Effect of Failure to State a Claim

Even though the court construed the allegations in favor of Plaintiff and accepted as true all facts pled, the court finds that Plaintiff failed to raise more than speculation that Defendants acted unlawfully.  In light of the complaint's deficiencies, the question is whether Plaintiff should be allowed an opportunity to

amend.  <u>See</u> <u>Walters v. J.D. Palantine, L.L.C.</u>, A-15-CV-850-LY, 2017 WL 79978, at *3 (W.D. Tex. Jan. 9, 2017)(slip copy)(quoting <u>Hart v. Bayer Corp.</u>, 199 F.3d 239, 247 n.6 (5th Cir. 2000))(stating that the court should allow leave to amend before granting dismissal with prejudice).

In this case, Plaintiff has provided a thorough account of the facts underlying her claims.  While it is unclear whether Plaintiff could correct through amendment the inadequacies explained above, Plaintiff's pattern of obstruction and nonparticipation warrants dismissal under Rule 37 as explained below.

### III.  Motion to Dismiss as a Discovery Sanction

Rule 37(b)(2)(A) lists appropriate sanctions for the failure of a party to obey a discovery order, which includes dismissing the action in whole.  The court "has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." <u>Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.</u>, 685 F.3d 486, 488 (5th Cir. 2012)(quoting <u>Pressey v. Patterson</u>, 898 F.2d 1018, 1021 (5th Cir. 1990)).  Even so, a finding of "bad faith or willful misconduct" is necessary to justify dismissal of a case.  <u>Id.</u> (quoting <u>Pressey</u>, 898 F.2d at 1021); <u>see also</u> <u>Barnes v. Tumlinson</u>, 597 F. App'x 798 (5th Cir. 2015)(unpublished)(quoting <u>Bryson v. United States</u>, 553 F.3d 402, 404 (5th 2008))(stating that a "clear record of delay or contumacious conduct by the plaintiff" is required to justify dismissal with prejudice).  The court should also consider whether

lesser sanctions would be better suited to the misconduct at issue. See Barnes, 597 F. App'x at 798 (citing Bryson, 553 F.3d at 404).

Here, Plaintiff blatantly disobeyed two court orders to attend her deposition on two separate dates.  The reason she articulated in advance of her failure to appear at the first was that she disagreed with the court's order on her motion to compel and that, in her view, inadequate responses by Defendants did not deserve her attendance at a deposition.  With regard to both the first and second court-ordered deposition dates, the court explained that disagreeing with a discovery ruling did not justify refusing to attend the deposition.  The court also warned Plaintiff more than once that her lawsuit could be dismissed as a sanction for failing to comply with a court discovery order.

Not only did Plaintiff wilfully fail to attend her scheduled depositions, Plaintiff failed to participate in the drafting of the joint discovery/case management plan, argued with the court at a hearing, failed to attend a noticed hearing, failed to respond timely to motions, refused to cooperate with the court's staff to schedule a hearing, failed to respond to Defendants' inquiries as to the reason Plaintiff was unavailable for the first deposition date and as to an alternate date, and expressed her unwillingness to respond to motions, letters, and emails unless convinced it would be worth her time.  Most recently, Plaintiff submitted a letter in which she reiterated her objections to prior court

49

orders, complained about the difficulty of the litigation process, accused the undersigned and opposing parties of illegal and unethical conduct, and, in essence, stated that she was no longer able to prosecute this lawsuit.

The court finds that Plaintiff has engaged in a pattern of contumacious and obstructionist behavior that has prejudiced Defendants' ability to defend this lawsuit and has multiplied their legal expenses. Plaintiff's willful misconduct began prior to her non-attendance at the scheduled deposition date and continues to this date. The court finds that its efforts to accommodate Plaintiff, to explain the legal process to her, and to warn her of the consequence of her failure to obey court orders have been utterly unsuccessful. The more effort expended by the court and Defendants, the more Plaintiff became disruptive and disengaged. Therefore, the court finds no lesser sanction to be better suited.

Plaintiff's entire lawsuit should be dismissed on this basis.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that SBISD Defendants' Motion to Dismiss for Failure to State a Claim for Which Relief Can Be Granted, Defendant Spalding's Motion to Dismiss Pursuant to Rule 12(b)(6), and SBISD Defendants and Defendant Spalding's Motion to Dismiss Under Rule 37 for Failure to Comply with Court-Ordered Depositions be **GRANTED**.

The Clerk shall send copies of this Memorandum and

Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Rule 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this $\underline{24^{th}}$ day of January, 2017.


_____
U.S. MAGISTRATE JUDGE

51